**Karyn A. CASSANO, Plaintiff,**

v.

**DeSOTO, INC., et al., Defendants.**

**No. 93 C 4485.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 19, 1994.

John Malevitis, Bernard R. Nevoral & Assoc, Ltd., Chicago, IL, for plaintiff.

William Cirignani Seyforth, Shaw, Fairweather, & Geraldson, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Mark Renfro ("Renfro") and T. Farrell Shoffeitt ("Shoffeitt") have moved for summary judgment against Karyn Cassano ("Cassano"), seeking to be dismissed from her Title VII[1] Complaint charging them as well as DeSoto, Inc. ("DeSoto") with sex discrimination. For the reasons stated in

---

1. Citations to Title VII (42 U.S.C. §§ 2000e to 2000e–17) will take the form "Section—," referring to the Title 42 numbering rather than to Title VII's internal numbering.

this memorandum opinion and order, their motion is denied.

## Facts [2]

Cassano's assertions of discrimination presented to EEOC (as reflected in her Affidavit, P.Ex. B) expressly identify both Renfro and Shoffeitt as the architects of DeSoto's assertedly discriminatory adverse employment action:

> I began my employment with the above named Respondent [DeSoto] in March of 1980, where my most recent title was Personnel Administrator. Up until the beginning of June of 1991, Dan Zacharski was the Director of Office Services and my immediate supervisor. In my May of 1991 performance review, Zacharski recommended that I be considered for exempt status in 6 to 7 months, which would have entitled be [sic] to a higher salary and better benefits. In early June of 1991, shortly after control of the company changed hands, Zacharski was let go. In May of 1991, Mark Renfro became the new Human Resources Director and after Zacharski left, Renfro became my immediate supervisor.

> From June of 1991 until January 24, 1992, I performed all of Zacharski's former duties as Director of Office Services. On or about January 6, 1992, I was denied a salary increase and promotion to exempt status by Renfro and the new Chief Operating Officer—T. Farrell Shoffeitt, and for this reason gave notice of my resignation on the same date.

Cassano's Charge of Discrimination (P.Ex. A, prepared by EEOC by typing information onto its printed form and then having it signed by Cassano) named only DeSoto itself in the box provided immediately below the legend reading "Named as the employer, labor organization, employment agency, apprenticeship committee, state or local government agency who discriminated against me." But here is what Cassano testified at her deposition in this case (Dep. 130–31, 134):

Q. Take a look at it. Is that your signature at the bottom of your charge of discrimination?

A. Yes.

Q. You signed that on July 6, 1992?

A. Yes.

Q. Did you decide at that time to sue Mark Renfro?

A. Yes.

Q. Where is his name down as a Defendant or a Respondent to your charge of discrimination?

A. Apparently, they left it off.

Q. Who is "they"?

A. EEOC.

Q. Where is Farrell Shoffeitt's name?

A. Apparently, they left it off, EEOC.

\* \* \* \* \* \*

Q. Well, the form that you filled out for EEOC, did you list Mark Renfro and Farrell Shoffeitt as Respondents?

MR. MALEVITIS: Objection, asked and answered.

BY THE WITNESS:

A. I gave them DeSoto, Mark Renfro, Farrell Shoffeitt, William Speer's names.

## "Employers" under Title VII

Title VII's definition of "employer" reads this way in relevant part (Section 2000e(b), emphasis added):

> (b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such a person....*

And Section 2000e–2(a) defines "unlawful employment practice" in terms of discriminatory conduct by "an employer." Finally, Section 2000e–5(e) calls for the EEOC filing of unlawful employment practice charges against "the person against whom such charge is made."

■ Read in the normal way (that is, as a matter of plain meaning), those provisions

---

**2.** This is by no means an effort to set out all of the facts relating to Cassano's claim. Instead it is a skeletal presentation limited to the facts relevant to decision of the present motion.

would appear to make individuals Renfro and Shoffeitt as well as corporate employer De-Soto potentially liable for their asserted discrimination here. Our Court of Appeals has not had occasion to opine directly on that question.[3] But despite the statutory language a substantial number of courts (perhaps a majority) have rejected such personal liability. As this Court's colleague Honorable Marvin Aspen put it in *Pommier v. James L. Edelstein Enterprises,* 816 F.Supp. 476, 480–81 (N.D.Ill.1993) (citing and following the opinion of another colleague, Honorable Brian Barnett Duff, in *Weiss v. Coca-Cola Bottling Co.,* 772 F.Supp. 407, 410–11 (N.D.Ill.1991)):

> The only court within this district to address the issue has held that such supervisors are not "employers" against whom a Title VII action may be maintained in their individual capacities. The Court in *Weiss* reasoned that, to the extent that such a supervisor is an "agent" of the employer, such individual stands only as a surrogate for the employer and, hence, may only be held liable in their official capacity.

That approach is unpersuasive to this Court. Like its other colleague Honorable James Moran, and in part for the reasons that he has set out in *Vakharia v. Swedish Covenant Hosp.,* 824 F.Supp. 769, 785–86 (N.D.Ill.1993), this Court opts to uphold the prospect of individual personal liability stemming from a discriminatory decision made by a responsible decisionmaker on behalf of an employer corporation. After all, there is no compelling reason for importing into employment discrimination cases the "official capacity" concept that plays a role in Section 1983 jurisprudence:

> 1. It does not require a congressional enactment to render a corporation or other institutional employer responsible for its employees' actions taken on its behalf. And if that really were Congress' limited intention, it surely chose an odd and roundabout way of doing so—why would it enact a provision that defined such employees as "agents" coming within the definition of "employer," instead of including a *direct* statement of respondeat superior liability in the statute?

> 2. It would be an extraordinary situation in which an assertedly discriminated-against employee, after conferring with an EEOC intake representative and explaining to that representative the circumstances of claimed discrimination by a corporation or other institutional employer, would end up naming *only* a fellow employee as the "employer,"[4] thus requiring an application of the "official capacity" doctrine to bring the actual employer into the equation. And if *both* the actual employer and a fellow employee were in fact targeted in any EEOC charge and in the subsequent complaint, the latter's inclusion would be mere surplusage under "official capacity" principles.

So this Court does not share the point of view of such decisions as *Pommier* and *Weiss* as a means of explaining away the normal reading of the statutory provisions.

DeSoto Mem. 3 misleadingly cites this Court's opinion in *Zakutansky v. Bionetics Corp.,* 806 F.Supp. 1362 (N.D.Ill.1992) as standing for the same proposition as *Weiss* and *Pommier.* That citation (significantly lacking any specific page reference) is frankly both bogus and offensive—what *Zakutansky, id.* at 1365 actually did was to *uphold* a complaint that had included a decisionmaking fellow employee in his individual capacity as a Title VII "employer"—though this Court there recognized the reality (*id.* at 1365 n. 7)

---

**3.** However, *Gaddy v. Abex Corp.,* 884 F.2d 312 (7th Cir.1989) dealt with a judgment in an employee's favor on a sex discrimination complaint that had been brought against both the corporate employer and the offending supervisor, and our Court of Appeals upheld the award of relief—including damages—against *both* of those defendants (*id.* at 318–19).

**4.** In that respect it is again worth looking at the legend on the EEOC form quoted earlier in this opinion. If it is kept in mind that the forms are typically completed by EEOC personnel based on their interviews with the normally-unrepresented employees, it is even more bizarre to posit the existence of a charge that named an individual as the "employer" while leaving out the actual corporate employer. Indeed, this Court recently learned (to its dismay) that until quite recently the EEOC intake personnel in its Chicago office were telling complainants that *only* the corporate employer could and would be charged.

that the only potential for enforcing such individual liability might be if the corporate employer proved financially incapable of satisfying plaintiff's entitlement on the Title VII claim. It is bad enough for a lawyer to miscite any precedent (perhaps suspecting that the judge may not read the case?)—but to miscite a judge's own decision to him or to her must be viewed as foolhardy in the extreme.

### Omission from the EEOC Charge

Thus rejecting a nonliteral reading of the statutory provisions does not fully answer the present question, however. Still another literal reading, this time of Section 2000e–5(f)(1) (emphasis added), suggests the dismissal of Renfro and Shoffeitt because they were not named in Cassano's charge filed with EEOC:

> [W]ithin ninety days after the giving of such notice [of right to sue] a civil action may be brought *against the respondent named in the charge* (A) by the person claiming to be aggrieved....

But this time the authoritative case law in this Circuit recognizes an exception that creates the prospect of defendant status for persons such as Renfro and Shoffeitt despite their *not* being named as respondents. That is the clear teaching of *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905–06 (7th Cir.1981), which identified an exception to the general rule announced in the statute (numerous citations omitted):

> [W]here an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance, the charge is sufficient to confer jurisdiction over that party.

> The purpose behind this exception is to prevent frustration of the goals of Title VII by not requiring procedural exactness in stating the charges. Complainants often file EEOC charges without the assistance of counsel and are not versed either in the technicalities of pleading or the jurisdictional requirements of the Act itself. They are also not expected to file EEOC charges which specifically articulate in precise terms, a narrow legal wrong which they have suffered, rather EEOC charges are typically detailed in lay person's terms. It is noted, in addition, that Congress could not have intended that a person filing EEOC charges should accurately ascertain, at the risk of later facing dismissal, at the time the charges were made, every separate entity which may have violated Title VII. Thus, given the Act's remedial purposes, charges are to be construed with "utmost liberality" and parties sufficiently named or alluded to in the factual statement are to be joined.[5]

In this instance Renfro and Shoffeitt were certainly "sufficiently named or alluded to in the factual statement," and Cassano has confirmed that the formal determination as to the framing of the charge itself was done by EEOC personnel. Moreover, just as in *Eggleston (id.* at 907), no purpose would appear to have been served by giving Renfro or Shoffeitt a separate opportunity to participate in the conciliation proceedings—after all, if DeSoto itself was not prepared to reconsider the assertedly discriminatory employment decisions (as it was not), involving the individuals in the process would appear to have been an act of supererogation. This Court's opinion in *Pauls v. Elaine Revell, Inc.*, 571 F.Supp. 1018 (N.D.Ill.1983)—which adhered to and applied *Eggleston* to uphold the inclusion of individual defendants in a Title VII action—is on all fours with the present case.

### Conclusion

This Court denies the Renfro–Shoffeitt motion for summary judgment. They will remain as defendants in this action.

---

5. [Footnote by this Court] *Eggleston*'s statement of "an exception to the general rule" continues to be repeated by our Court of Appeals (see, e.g., *EEOC v. Vucitech*, 842 F.2d 936, 944 (7th Cir. 1988); *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126–27 (7th Cir.1989); *Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir.1991)).