**Julie LYNAM, et al., Plaintiffs,**

v.

**FOOT FIRST PODIATRY CENTERS, P.C., et al., Defendants.**

No. 94 C 6789.

United States District Court, N.D. Illinois, Eastern Division.

May 25, 1995.

---

Stephen G. Seliger, Mary Lane Mikva, Clare Marie Kralovec, Seliger & Mikva, Ltd., and James Gerard Bradtke and Jennifer Kay Soule, Soule & Bradtke, Chicago, IL, for plaintiffs.

Carmel M. Cosgrave, Michael S. Loeffler, Andrew S. Nadolna, Thomas P. Carney, Jr., Querrey & Harrow, Ltd., and Michael T. Roumell, and Tracey Lynne Truesdale, Chicago, IL, for defendants.

## MEMORANDUM OPINION
### AND ORDER

CASTILLO, District Judge.

Plaintiffs Julie Lynam ("Lynam"), Robin Schmulbach ("Schmulbach"), and Jenny Luc-

chesi ("Lucchesi") bring this sex discrimination action against the defendants[1] under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (1983 & Supp.1995) (count I). Invoking the Court's supplemental jurisdiction, plaintiffs Lynam and Schmulbach also assert various state-law claims: Lynam and Schmulbach bring claims against some of the individual defendants under Illinois law for assault and battery based on their alleged touching of these plaintiffs (count II); and, Lynam also raises a claim of intentional infliction of emotional distress against the individual defendants (count III).

Defendants Sklar, Wilhelm, Stojanovski, Lantvit and Lieb[2] move to dismiss count I of plaintiffs' complaint on the ground that Title VII does not authorize the imposition of liability against individuals in their individual capacity-except perhaps under certain circumstances not present here. These defendants also move to dismiss counts II and III, contending that these counts are barred by the Illinois Human Rights Act, 775 ILCS 5/1–101 *et seq.*

### BACKGROUND

Plaintiffs' first amended complaint alleges the following facts which are taken as true on a motion to dismiss. *See Gillman v. Burlington N. R.R. Co.,* 878 F.2d 1020, 1022 (7th Cir.1989).

Lynam, Schmulbach, and Lucchesi were employed as medical assistants at various Foot First Podiatry Centers in the Chicago suburban area. Defendant Sklar is the President and Secretary of four of the five Foot First corporate defendants named in this suit and had primary supervisory authority at all of the Foot First offices where the plaintiffs worked. Am.Compl. ¶ 9. In particular, Sklar was plaintiffs' primary supervisor. *Id.* Defendants Wilhelm, Warheit, Stojanovski, Lantvit, and Lieb also had supervisory authority at Foot First centers at which plain-

tiffs worked; and, plaintiffs specifically allege that each of these defendants was one of their supervisors with authority to affect their interests (including authority to hire, fire, and promote). *Id.* ¶¶ 10–14. During the course of plaintiffs' employment, all six of these individually named defendants repeatedly made lewd and sexually suggestive, sexually profane and generally offensive sexual remarks to the plaintiffs while they were working. *Id.* ¶ 15. Additionally, defendants Sklar, Wilhelm, and Stojanovski "touched plaintiff Lynam in an offensive and unwelcome manner" and Sklar and Wilhelm "touched plaintiff Schmulbach in an offensive and unwelcome manner." *Id.* ¶ 15. Sklar discharged Lynam in November of 1992 because she would not participate in or encourage the individually named defendants' sexually offensive behavior. In March and May of 1993 respectively, Lucchesi and Schmulbach were constructively discharged for the same reasons. *Id.* ¶ 16.

### ANALYSIS

#### Standard of Review

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Associates, Inc. v. Chicago Housing Auth.,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). The only question is whether relief is possible under any set of facts that could be established consistent with the allegations. *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). All well-pleaded facts are taken as true, all inferences are drawn in favor of the plaintiff and all ambiguities are resolved in favor of the plaintiff. *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992).

#### Count I

■ On May, 22, 1995, the Seventh Circuit issued its opinion in *U.S. E.E.O.C. v. AIC*

---

**1.** The plaintiffs have named as defendants five professional corporations (Foot First Podiatry Centers, P.C., Foot First Podiatry Centers II, P.C., Foot First Podiatry Centers III, P.C., Foot First Podiatry Centers IV, P.C., and Foot First Podiatry Centers V, P.C.) and six individually

named persons (Keith Sklar, Arthur Wilhelm, Michael Warheit, Daniel Stojanovski, Timothy Lantvit, and Ronald Lieb).

**2.** The sixth individually named defendant, Michael Warheit, is separately represented.

*Security Investigations, Ltd.,* 55 F.3d 1276 (7th Cir.1995), in which the court held that "individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA." *Id.* at 1282. Because the ADA and Title VII define "employer" in a materially identical manner, that holding compels the same result in a suit brought under Title VII. *See Jendusa v. Cancer Treatment Centers of America,* 868 F.Supp. 1006, 1008 n. 2 (N.D.Ill.1994); *AIC Security,* 55 F.3d at 1282 ("our holding ... obviously affects the resolution of the very similar questions under Title VII and the ADEA"). Although this Court continues to be of the opinion that Congress' intent to eradicate discrimination in the workplace is best served by recognizing individual liability under the antidiscrimination statutes, *see Jendusa,* 868 F.Supp. at 1011, we are mindful of our subordinate position as a district court and recognize that we are, of course, bound to follow Seventh Circuit precedent. Accordingly, we grant defendant's motion to dismiss count I as directed against them in their individual capacity.[3]

As a postscript, however, we note that although the Seventh Circuit has now provided much needed guidance in this circuit, the final word has, perhaps, not yet been spoken. The circuits continue to be split and, indeed, within several circuits there is no clear consensus. *See Ball v. Renner,* 54 F.3d 664, 666–67 (10th Cir.1995) (summarizing circuit court positions). As one example of the divergent views of the circuit courts, we observe that in *AIC Security,* the Seventh Circuit adopted the position that the "and any agent" language of the antidiscrimination statutes serves merely "to ensure that courts would impose *respondeat superior* liability upon employers for the acts of their agents." *AIC Security,* 55 F.3d at 1281. In stark contrast, less than two weeks earlier, the Tenth Circuit observed in *dicta* that reading the "and any agent" language as merely embodying *respondeat superior* principles "makes little sense" while,

> giving the "agent" phrase its literal meaning—that is, as making the responsible

agent a statutory "employer" who is prohibited ... from discriminatory conduct and is rendered liable ... for violating that prohibition—is eminently sensible as a matter of statutory structure and logical analysis.

*Ball v. Renner,* 54 F.3d 664, 667 (10th Cir. 1995). Ultimately, the *Ball* court did not have to reach the issue because it held that the individually named defendant in that case could not be found to be an "employer" because he lacked supervisor/managerial authority over the plaintiff. *Id.* at 667–68. As the *Ball* court observed, the recent holdings of the Tenth Circuit are somewhat equivocal with respect to whether individual supervisors may be held personally liable. *See id.;* compare *Sauers v. Salt Lake County,* 1 F.3d 1122, 1124–25 (10th Cir.1993) (permitting suit against an individual but only in his or her "official capacity" hence negating personal liability) *and Brownlee v. Lear Siegler Management Servs. Corp.,* 15 F.3d 976, 978 (10th Cir.1994) (noting that "a principal's *status as an employer* can be attributed to its agent to make the agent statutorily liable for *his own* age-discriminatory conduct"). However, if the *Ball* opinion represents the current inclination of the Tenth Circuit, then it would appear that the Tenth Circuit is now leaning toward recognizing individual liability under Title VII thus deepening the divide between the circuits. In view of the conflicting circuit opinions and the national importance of the issue we would not be at all surprised to see the Supreme Court consider the matter and provide the final judicial word.

We find some support for this Court's principle emphasis on the antidiscrimination statutes' deterrent function, *see Jendusa v. Cancer Treatment Centers of America, Inc.,* 868 F.Supp. 1006, 1011 (N.D.Ill.1994) ("this court is fundamentally persuaded that the prospect of individual liability is essential if the antidiscrimination statutes are to have their full deterrent effect"), in the Supreme Court's most recent discussion of the antidiscrimination statutes in *McKennon v. Nashville Banner Publishing Co.,* —— U.S. ——,

---

3. We note that *AIC Security* also disposes of plaintiffs' Title VII claim against Sklar insofar as it is based on an alter-ego theory. *See AIC Secu-* *rity,* 55 F.3d at 1282 ("it does not matter even if [the individually named defendant] was [the employer's] alter ego.")

115 S.Ct. 879, 130 L.Ed.2d 852 (1995). In *McKennon*, wherein the Court addressed the effect of so-called after-acquired evidence on the viability of an ADEA claim, the Court reiterated the important societal functions served by the private litigant who seeks redress for his or her injuries resulting from employment discrimination. The Court began its discussion by articulating the common purpose of the antidiscrimination statutes: " 'the elimination of discrimination from the workplace,' " —— U.S. at ——, 115 S.Ct. at 884 (quoting *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979)), thereby underscoring the importance of the fundamental deterrence objective of these statutes. Quoting *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 45, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974), the Court noted that "[t]he private litigant [in Title VII] not only redresses his own injury but also vindicates the important congressional policy against discriminatory employment practices." *McKennon*, —— U.S. at ——, 115 S.Ct. at 884. This Court remains "fundamentally persuaded" that the prospect of individual liability is essential if Congress' intent to deter discriminatory employment practices is to be fully effectuated. *See Jendusa*, 868 F.Supp. at 1011. Moreover, in view of such language, we believe that the Seventh Circuit has perhaps too easily dismissed the antidiscrimination statutes' broad remedial purpose-as well as the objective of securing "complete justice" to victims of discrimination-when it speaks of " 'some vague, aspirational broad intent' ". *AIC*, 55 F.3d at 1282 (quoting with approval *Hudson v. Soft Sheen Prods., Inc.*, 873 F.Supp. 132, 136 (N.D.Ill.1995)). Where such critical issues as race, gender, and disability discrimination-which are inextricably interconnected with this Nation's history of disturbed race and gender relations-are presented to the court, we believe that the broad aspirational goals of Congress, at the very least, ought not to be disregarded.

Finally, we observe that although the *AIC Security* court derided concerns that its holding could leave victims of discrimination without a remedy as "Chicken Little-esque", *AIC Security*, 55 F.3d at 1282, this case presents precisely one of the scenarios noted in *Jen-*

*dusa* in which the prospect that a victim of employment discrimination will be left without a remedy looms large. For misplaced reasons, the individual defendants in this case argued that even if Title VII authorized individual liability, they could not be held liable because their alleged harassment occurred outside of the scope of their authority. While we need not address this misguided argument, we note that, in the wake of *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the corporate defendants named in this suit will no doubt also argue that their supervisors' conduct occurred outside the scope of their authority. The issue of whether an individually named supervisor acted within the scope of his or her authority is a question that bears on whether the supervisor's conduct will be imputed to his or her principal (the institutional employer)—not, as the individual defendants appear to have believed, whether the supervisor is liable in the first place. See *Meritor*, 477 U.S. at 72, 106 S.Ct. at 2408 (stating that courts should look to agency principles for determining whether the institutional employer should be held liable for the acts of its agents). Now that it is clear that the individual defendants cannot be held individually liable, the plaintiffs' only avenue for relief is against the corporate defendants. But if those defendants prevails in establishing that their supervisors' conduct occurred outside the scope of their authority it is likely that the corporate defendants will evade liability as well—leaving the victims without relief and subverting both of the objectives of Title VII, deterrence and securing justice for victims. As we have observed earlier, we do not believe congress intended such a result:

[I]t must be noted that in those cases in which agency principles lead to the conclusion that the institutional employer is not liable for the conduct of its agent, a determination that Title VII does not authorize individual liability would effectively leave the victim without an adequate remedy and would provide no deterrence to the perpetrator. Because such a result is wholly incompatible with the remedial and deterrence objectives of Title VII and the other antidiscrimination statutes, the court

concludes that the statutes must be interpreted to authorize individual liability.

*Jendusa,* 868 F.Supp. at 1013 n. 9. Nevertheless, that is the regime we are bound to follow and we shall respectfully do so.

*Counts II and III*

Defendants move to dismiss counts II (assault and battery) and III (intentional infliction of emotional distress) on the ground that these claims are barred by the Illinois Human Rights Act (hereinafter "the Human Rights Act"), 775 ILCS 5/1–101 *et seq.* Defendants contend that the conduct complained of in counts II and III constitutes "civil rights violations" under the Human Rights Act, and that the Human Rights Act bars plaintiffs' claims for assault and battery and intentional infliction of emotional distress.

■ Section 8–111(C) of the Illinois Act provides, "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8–111(C). The Illinois Supreme Court has interpreted § 8–111(C) as going to the court's subject matter jurisdiction. *Geise v. Phoenix Co. of Chicago, Inc.,* 159 Ill.2d 507, 515, 203 Ill.Dec. 454, 457, 639 N.E.2d 1273, 1276 (1994). Thus, if a plaintiff's common law action is construed as seeking redress for a civil rights violation within the meaning of the Human Rights Act, Illinois circuit courts would lack original jurisdiction to hear the action, *Id.,* 159 Ill.2d at 516, 203 Ill.Dec. at 457, 639 N.E.2d at 1276; *a fortiori,* a federal district court sitting in diversity would also lack jurisdiction to hear the action. Thus, the issue presented is whether plaintiffs' common-law claims are predicated on civil rights violations within the meaning of the Human Rights Act.

The Human Rights Act defines sexual harassment in the workplace as a "civil rights violation." Section 2–102 provides in pertinent part: "It is a civil rights violation ... [f]or any employer, employee, [or] agent of any employer to engage in sexual harassment." 775 ILCS 5/2–102(D). "Sexual harassment" is defined, in turn, as meaning any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment. 775 ILCS 5/2–101.

The foregoing provisions and, specifically, the effect of § 2–811(C)'s exclusivity provision were construed by the Illinois Supreme Court in *Geise.* In *Geise,* the plaintiff brought a four count complaint against her supervisor and her corporate employer. The first two counts were directed against her supervisor individually, while counts III and IV sought to impose liability against her employer under theories of negligent retention and negligent hiring, respectively. The trial court dismissed counts III and IV on the grounds that they failed to state a cause of action. The intermediate appellate court reversed, holding that Illinois recognizes such claims and that they were adequately pled in the plaintiff's complaint. In its petition to the Illinois Supreme Court, the employer argued that plaintiff's claims of negligent hiring and negligent retention amounted to a charge of sexual harassment under the Human Rights Act and that under § 8–111(C), the trial court lacked subject matter jurisdiction to hear the claims. *Geise,* 159 Ill.2d at 513, 203 Ill.Dec. at 456, 639 N.E.2d at 1275. The Illinois Supreme Court agreed. *Id.,* 159 Ill.2d at 515, 203 Ill.Dec. at 457, 639 N.E.2d at 1276.

In so doing, the Court rejected the plaintiff's arguments that the sexual harassment she suffered at the hands of her supervisor was separate and distinct from her claims against her employer, which, she contended, were "unrelated to considerations of sexual harassment and [are] predicated on independent policy considerations." *Id.,* 159 Ill.2d at 516, 203 Ill.Dec. at 458, 639 N.E.2d at 1277. Instead, the Court concluded that the negli-

gence claims directed against the employer were "inextricably linked" to the concept of sexual harassment. *Id.*, 159 Ill.2d at 516–17, 203 Ill.Dec. at 458, 639 N.E.2d at 1277. "Absent the allegations of sexual harassment, Geise would have no independent basis for imposing liability on her former employer under the facts presented here. Counts III and IV depend on the prohibitions against sexual harassment for their viability." *Id.*, 159 Ill.2d at 517, 203 Ill.Dec. at 458, 639 N.E.2d at 1277. The Court buttressed its conclusion by noting that the appellate court referred to Title VII, its accompanying regulations, and the prohibitions against sexual harassment contained in the Human Rights Act in concluding that Geise had properly alleged legal duties that would support a negligence action. *Id.*, 159 Ill.2d at 517, 203 Ill.Dec. at 458, 639 N.E.2d at 1277. The Court also concluded that Geise's allegations of negligence against her employer were probably included for the purpose of extending responsibility to the employer for the supervisor's discriminatory acts. However, the Court observed that such allegations were unnecessary because—unlike Title VII—the Human Rights Act imposes strict liability on the employer for the harassing acts of its supervisory personnel. *Id.*, 159 Ill.2d at 518, 203 Ill.Dec. at 458, 639 N.E.2d at 1277.

Plaintiffs do not attempt to deny the potential preclusive effect of *Geise.* Instead, to avoid the reach of *Geise* and its progeny, plaintiffs Lynam and Schmulbach argue that their assault and battery count (count II) contains allegations that go beyond allegations of sexual harassment and therefore *Geise* does not compel dismissal of the suit. Specifically, these plaintiffs contend that in paragraphs 18 and 19 of count II, they allege

that in addition to the acts alleged in paragraph 15, [certain of the defendants] touched them in an offensive and unwelcome manner. Whereas *sexually* offensive and unwelcome touchings provide the basis of a sexual harassment claim, offensive and unwelcome touchings are not always sexually based. The plaintiffs' allegations in paragraphs 18 and 19 are broad enough to provide an independent basis for their state law claim.

Pls.' Resp.Mot.Dis. at 14. This Court is highly skeptical about the extent to which plaintiffs' assault and battery claim extends beyond their sexual harassment claim; however, we conclude that the liberal rules of notice pleading in conjunction with the Supreme Court's admonition that a complaint should be dismissed under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts entitling her to relief, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984), do not permit us to dismiss this count. Initially, we observe that paragraph 15 of the complaint includes "striking" as an example of defendants' unlawful conduct; and, as plaintiffs correctly note the complaint speaks only in terms of "offensive and unwelcome" touching with no reference to sexual touching. Although the context strongly suggests that the striking referred to is sexually related (perhaps an unwelcome striking of the buttock) [4], an ambiguity exists which must be resolved in favor of the plaintiffs on a motion to dismiss. *Dawson,* 977 F.2d at 372. More importantly, we consider the language quoted above from plaintiffs' memorandum to constitute a representation to the Court that allegations of non-sexual touching are being advanced in this case.[5] The Court is explicit-

---

**4.** The complete passage refers to "Physically striking, kissing or hugging the plaintiffs and other female employees without consent." Am. Compl. ¶ 15(e). The fact that the act of striking is lumped together with kissing and hugging and the fact that this passage refers to defendants' conduct solely in relation to female employees strongly suggests that the striking referred to relates to sexually harassing behavior. Moreover, we note that plaintiffs' use of the term "unwelcome"—a term central to most definitions of sexual harassment, including that of the Human Rights Act, 775 ILCS 5/2–101—also sug-

gests that the contact involved was envisioned as sexual in nature. Nevertheless, the term "unwelcome" also connotes a lack of consent, which is central to the definition of battery, *see Cohen v. Smith,* 269 Ill.App.3d 1087, 207 Ill.Dec. 873, 876, 648 N.E.2d 329, 332 (1995), and we must resolve this ambiguity in favor of the plaintiffs.

**5.** To the extent that plaintiffs' assault and battery claim is premised on sexual contact or comments, we find that *Geise* bars the claim. Thus, the claim may proceed only with respect to plaintiffs' allegations of non-sexual touching.

ly relying on that representation. For these reasons, defendants' motion to dismiss count II on the ground that it is barred by the Human Rights Act is denied.[6]

■ In a manner similar to that used to meet defendants' challenge to count II, plaintiffs argue that count III (Lynam's claim for intentional infliction of emotional distress) also must not be dismissed because, in addition to the allegations of sexual harassment incorporated by reference from count I, Lynam alleges that defendants caused her extreme emotional distress by:

a. Requiring plaintiffs and other employees to perform unnecessary, inappropriate and expensive tests on patients; and

b. Requiring plaintiffs and other employees to perform medical procedures for which they were not adequately trained or certified.

Am.Compl. ¶ 18. As an initial matter, we find that these allegations are sufficient to remove count III from the reach of *Geise*.[7] In response, however, defendants' maintain that these allegations do not rise (or perhaps more aptly, sink) to the level actionable under Illinois law for intentional infliction of emotional distress and therefore count III must still be dismissed. We agree.

■ To prevail on a claim for intentional infliction of emotional distress under Illinois law, a plaintiff must prove: (1) extreme and outrageous conduct; (2) resulting in severe emotional distress; (3) that was intentional or in reckless disregard of the consequences; and (4) that proximately caused the distress. *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976). In *Public Finance*, the Court characterized "extreme and outrageous conduct" as "that which goes beyond all possible bounds of decency." *Id.* Even assuming

that plaintiff Lynam is the most righteous and conscientious citizen we cannot conclude that defendants' alleged conduct in requiring her and her co-workers to perform unnecessary, inappropriate and expensive tests on patients amounts to conduct that "goes beyond all possible bounds of decency." Accordingly, we hold that the allegations of paragraph 18(a) are insufficient as a matter of law to support an intentional infliction of emotional distress claim.

Similarly, Lynam's allegation in paragraph 18(b) that she was required to perform "medical procedures" for which she was not adequately trained or certified does not meet the stringent test set forth in *Public Finance*. The question of whether certain conduct is so extreme and outrageous as to constitute intentional infliction of emotional distress turns critically on the specific nature of the conduct. *Doe v. City of Calumet*, 240 Ill.App.3d 911, 182 Ill.Dec. 155, 165, 609 N.E.2d 689, 699 (1992). Standing alone, the allegation that one was required to perform medical procedures for which is not adequately trained or certified cannot support a claim of intentional infliction of emotional distress—even when viewed in the light most favorable to the plaintiff. In the absence of any detail regarding the medical procedures Lynam and her co-workers were required to perform by the defendants, the Court cannot conclude that their conduct might be found to constitute extreme and outrageous conduct. Accordingly, we grant defendants' motion to dismiss count III.

## CONCLUSION

Defendants Sklar, Wilhelm, Stojanovski, Lantvit and Lieb's motion to dismiss count I [48–1] is granted insofar as it is directed against them. Their motion to dismiss

---

**6.** Whether plaintiffs can survive a motion for summary judgment following discovery—where the standards are quite different—remains to be seen. However, we put the plaintiffs on notice at this early stage of the litigation that on first blush their complaint strikes the Court as a classic example of over pleading, and they may be well-advised to consider amending their complaint to eliminate any superfluous or meritless claims. In the event that plaintiffs' battery claims prove to involve nothing more than the sexually-related touching underlying the sexual harassment

claim, this Court will not hesitate to impose appropriate sanctions.

**7.** However, to the extent that count III is predicated on the sexually harassing acts alleged in paragraph 15 of the amended complaint, we find that the claim to be barred by *Geise*. Accordingly, count III will only proceed with respect to the allegations of paragraph 18(b) of the amended complaint.

counts II and III [50–1] is granted in part and denied in part. Count III is dismissed. Count II will proceed only with respect to the allegations of non-sexual touching by the defendants. Defendants are directed to answer the complaint by June 12, 1995.