Julie LYNAM, Robin Schmulbach, and Jenny Lucchesi, Plaintiffs,

v.

FOOT FIRST PODIATRY CENTERS, P.C., Foot First Podiatry Centers, III, P.C., Foot First Podiatry Centers, IV, P.C., Foot First Podiatry Centers, V, P.C., Keith Sklar, Arthur Wilhelm, and Daniel Stojanovski, Defendants.

No. 94 C 6789.

United States District Court, N.D. Illinois, Eastern Division.

March 12, 1996.

Clare Marie Kralovec, Nash, Lalich & Kralovec, Chicago, IL, Aram A. Hartunian, Futterman & Howard, Chtd., Chicago, IL, James Gerard Bradtke, Jennifer Kay Soule, Soule & Bradtke, Chicago, IL, Stephen G. Seliger, Mary Lane Mikva, Seliger & Mikva, Ltd., Chicago, IL, for Julie Lynam, Robin Schmulbach, Jenny Lucchesi.

Carmel M. Cosgrave, Michael S. Loeffler, Andrew S. Nadolna, Querrey & Harrow, Ltd., Chicago, IL, Thomas P. Carney, Jr., Querrey & Harrow, Ltd., Chicago, IL, for Foot First Podiatry Cleaners, P.C., Foot First Podiatry Centers III, P.C., Foot First Podiatry Centers, IV, P.C., Foot First Podiatry Centers V, P.C., Keith Sklar, D.P.M., Arthur Wilheim, D.P.M., Daniel Stojanovski, D.P.M., Timothy Lantvit, D.P.M., Ronald Lieb, D.P.M.

Michael T. Roumell, Tracey Lynne Truesdale, Murphy, Smith & Polk, Chicago, IL, Carmel M. Cosgrave, Michael S. Loeffler, Andrew S. Nadolna, Thomas P. Carney, Jr., Querrey & Harrow, Ltd., Chicago, IL, for Foot First Podiatry Centers II, P.C.

Michael T. Roumell, Tracey Lynne Truesdale, Murphy, Smith & Polk, Chicago, IL, for Michael Warheit, D.P.M.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This is a sexual harassment case in which plaintiffs Julie Lynam ("Lynam"), Robin Schmulbach ("Schmulbach"), and Jenny Lucchesi ("Lucchesi") allege violations of Title VII against defendants Foot First Podiatry Centers, P.C., Foot First Podiatry Centers, III, P.C., Foot First Podiatry Centers, IV, P.C., and Foot First Podiatry Centers, V, P.C. (collectively referred to herein as "corporate defendants"), (Count I). In addition, plaintiffs Lynam and Schmulbach bring a state-law assault and battery claim against individual defendants Keith Sklar ("Sklar"), Arthur Wilhelm ("Wilhelm"), and Daniel Stojanovski ("Stojanovski") (collectively referred to herein as "individual defendants"), alleging unlawful touching by these defendants during the plaintiffs' employment (Count II). Before the Court are two motions for partial summary judgment, one brought by the corporate defendants as to Count I (sex discrimination), and the other brought by the individual defendants as to Count II (assault and battery). For the reasons set forth below, the corporate defendants' motion for partial summary judgment as to Count I is denied and the individual defendants' motion for partial summary judgment as to Count II is granted.

## BACKGROUND

■ The following undisputed facts are gleaned from the parties' respective Local

General Rule 12 statements of material facts and accompanying exhibits.[1] Plaintiffs Lynam, Schmulbach, and Lucchesi were employed as medical assistants at various Foot First Podiatry Centers in the Chicago suburban area during the relevant time period of August of 1990 to May of 1993. Plaintiffs bring this action against their former employer's corporate form and three of its medical doctors.

The facts surrounding this lawsuit have already been reviewed by this Court in *Lynam v. Foot First Podiatry Centers, P.C.*, 886 F.Supp. 1443 (N.D.Ill.1995) ("Lynam I") and will be repeated here only to the extent they are relevant to this opinion. Plaintiff Lynam was employed with the Foot First enterprises from July 26, 1990 through November 3, 1992. During her employment, Lynam primarily worked at Foot First I in Schaumburg.[2] (Ind.Defs.' Facts ¶ 3). Schmulbach was employed from November of 1990 through May of 1993 and worked at both Foot First I and III locations. (*Id.* ¶ 4). Lucchesi was employed from October of 1992 through March of 1993 and worked at the Foot First III location. (*Id.* Facts ¶ 5). All three plaintiffs allege that they were discharged from Foot First Podiatry Centers because they would not participate in or encourage the sexually offensive behavior of the individual defendants.

Defendant Sklar is President and Secretary of the four Foot First corporate defendants named in this suit. (Corp.Defs.' Facts ¶ 7). In *Lynam I* this Court, applying Seventh Circuit law, held that the supervisors at Foot First Podiatry Centers could not be found individually liable under Title VII. *Lynam I* at 1446. *See also Williams v. Banning*, 72 F.3d 552, 554–55 (7th Cir.1995).

The Court also dismissed plaintiffs' assault and battery claim to the extent that it was premised on sexual touching and thus preempted by the Illinois Human Rights Act. *Lynam I*, 886 F.Supp. at 1448–50. Plaintiffs were allowed to proceed with Count II (assault and battery claim) based on allegations of non-sexual touching. *Id.*

## ANALYSIS
### Summary Judgment Standards

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view all evidence in a light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822

1. Local Rule 12(M)(3) requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue." The movant's statement must contain "specific references to affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth." The corporate defendants' statement, addressing the Title VII claim, shall be cited herein as "Corp. Defs.' Facts ¶ ——." The individual defendants' statement, addressing the assault and battery claim, shall be cited herein as "Ind. Defs.' Facts ¶ ——." Similarly, Local Rule 12(N)(3)(a) requires the nonmoving party to file a concise response to the movant's statement including, in the case of any disagreement, specific references to supporting materials. Plaintiffs' response shall be cited as "Pls.' Facts ¶ ——." Local Rule 12(N)(3)(b) authorizes the nonmoving party to submit a statement of "additional facts that require the denial of summary judgment"; pursuant to Local Rule 12(M), the moving party may then submit a response to the nonmoving

party's additional facts. Plaintiff's statement of additional facts shall be cited as "Pls.' Add'l Facts ¶ ——" and the defendants' response shall be cited as "Corp. Defs.' Resp. Add'l Facts ¶ ——." All properly supported material facts set forth in either party's statement (i.e., Corp. Defs.' Facts or Pl.'s Add'l Facts) are deemed admitted unless properly controverted by the statement of the opposing party. Local Rule 12(M) and 12(N)(3)(b); *see also Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir.1994); *Stewart v. McGinnis*, 5 F.3d 1031 (7th Cir.1993). Moreover, the mere denial of a particular fact without "specific references to the affidavits, parts of the record, and other supporting materials" that allegedly establish a factual dispute is insufficient; and, where a factual assertion is met with such a naked denial the fact may be deemed admitted. *Flaherty*, 31 F.3d at 453.

2. Foot First Podiatry Centers, P.C. and Foot First I are used interchangeably to describe the Schaumburg-based entity.

F.2d 656, 659 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987), and draw all inferences in the non-movant's favor. *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir.1990). However, if the evidence is merely colorable, or is not significantly probative or merely raises "some metaphysical doubt as to the material facts," summary judgment may be granted. *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Flip Side Productions, Inc. v. Jam Productions, Ltd.,* 843 F.2d 1024, 1032 (7th Cir.), *cert denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). In making its determination, the court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513.

### Count I: Title VII Claim

The corporate defendants contend that this Court lacks subject matter jurisdiction over the plaintiffs' Title VII claim because they collectively do not constitute an "employer" for Title VII's purposes. This defense requires this Court to address the single vs. multiple employer concepts under Title VII. Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. Sec. 2000e(b). A "person" under section 2000e(b) includes corporations. 42 U.S.C. § 2000e(a) (1988).

■ This circuit recognizes an "integrated enterprise" theory in defining the term "employer" under Title VII. Under this theory, legally separate corporations or individuals may be treated as one organization when the multiple entities are so interrelated that an aggrieved employee could justifiably believe that an individual or corporation related to the employee's immediate employer was jointly liable for the acts of the employer. *See United States E.E.O.C. v. Sen–Pop, Inc.,* 1994 WL 162611 (N.D.Ill.1994) (citing *Armbruster v. Quinn,* 711 F.2d 1332, 1337 (6th Cir.1983)).

■ To determine whether several corporations constitute a single employer, the Seventh Circuit in *Rogers v. Sugar Tree Products, Inc.,* 7 F.3d 577 (7th Cir.1993),[3] looked to several factors: (1) the interrelation of operations between the entities; (2) the degree of common management; (3) the degree of centralized control of labor relations and personnel; and (4) whether there is common ownership and financial control. *Id.* at 582 (citing *York v. Tennessee Crushed Stone Ass'n,* 684 F.2d 360, 362 (6th Cir.1982), which, in turn, borrowed from *Radio & TV Broadcast Technicians Local 1264 v. Broadcast Serv. of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965)). The Seventh Circuit in *Rogers* also recognized that while the presence or absence of any one factor is not determinative as to whether multiple entities constitute a "single employer" for Title VII purposes, "control over the elements of labor relations is a central concern." *Id.* See also *Richard v. LeSalle Talman Bank,* 1995 WL 234633 (N.D.Ill.1995) (citing *Mochelle v. J. Walter, Inc.,* 823 F.Supp. 1302, 1305 (M.D.La.1993), *aff'd,* 15 F.3d 1079 (5th Cir.1994)).

### 1. Interrelationship of Operations

■ First, with regard to the interrelationship of the named corporate defendants,

---

3. *Rogers* involved a claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) ("ADEA"), whereas the claim here falls under Title VII. Nonetheless, the Court will apply the reasoning from *Rogers* to the present claim. Indeed, "the substantive provisions of the ADEA were derived in haec verba from Title VII." *Rivas v. Federacion de Asociaciones Pecuarias,* 929 F.2d 814, 820 n. 15 (1st Cir.1991) (citing *Lorillard v. Pons,* 434 U.S. 575, 584 & n. 12, 98 S.Ct. 866, 872 & n. 12, 55 L.Ed.2d 40 (1978)). Additionally, the lower courts in this district commonly apply the single employer and integrated enterprise theories in Title VII lawsuits. *See, e.g., Watson v. MCI Communications Corp.,* No. 94 C 3082, 1995 WL 124095, at *1 (N.D.Ill. Mar. 21, 1995); *United States E.E.O.C. v. Sen–Pop, Inc.,* No. 93 C 3403, 1994 WL 162611 at *1 (N.D.Ill. Apr. 28, 1994).

we find that many of the practices cited by other courts to show interrelated operations are present here. These practices include shared management services, shared payroll and insurance programs, the preparation of mutual policy manuals, the use of employees on one payroll for the benefit of another entity, and the shared use of office space. *United States E.E.O.C. v. Sen–Pop, Inc.,* 1994 WL 162611 (N.D.Ill.1994) (citing *Stockett v. Tolin,* 791 F.Supp. 1536, 1551 (S.D.Fla. 1992)). In this case, all of the Foot First corporate defendants offered the same services (Pls.' Add'l Facts ¶ 15), shared the same profit sharing plan (*Id.* ¶ 18), and listed the same address on their 1992 and 1993 Federal Income Tax Returns (*Id.* ¶ 19). Indeed, the same patient could be seen by a doctor at any of the different Foot First locations. (Sklar Dep. at 23). Moreover, the doctors and medical assistants themselves rotated between the various Foot First locations. (Corp.Defs.' Facts ¶ 7; Wilhelm Dep. at 13).

Thus, although the Foot First entities had separate offices, the operations were so interrelated that "except for the name printed on their paychecks, [the employees] were not even sure which entity employed them or their coworkers." *Rogers,* 7 F.3d at 583 (quoting *E.E.O.C. v. Arlington Transit Mix, Inc.,* 734 F.Supp. 804, 807 (E.D.Mich.1990), *rev'd on other grounds,* 957 F.2d 219 (6th Cir.1991)). *See also Perry v. Manocherian,* 675 F.Supp. 1417, 1426 (S.D.N.Y.1987) (finding parent's operations interrelated with subsidiary when they shared the same headquarters, employees, and advertising); *Stockett v. Tolin,* 791 F.Supp. 1536 (S.D.Fla. 1992) (finding that corporations were sufficiently integrated to be considered one "employer" for purposes of Title VII where corporations shared management services, had common offices and boards of directors, shared same personnel department and were controlled by the same person). Indeed, unlike the facts in *Rogers,* here the Foot First entities were not operating as wholly distinct businesses in which transactions were made at "arm's length." On the contrary, the doctors and medical assistants worked at numerous Foot First offices (Pls.' Add'l Facts ¶ 1). At times, Foot First doctors working

at different locations did not know which location was associated with which entity. (Pls.' Add'l Facts ¶ 10). Moreover, in his deposition testimony, defendant Wilhelm stated that regardless of how many different Foot First offices he worked at during a given month, he would receive one paycheck for that pay period. (Wilhelm Dep. at 13–14).

There also is ample evidence to show that employees, such as the plaintiffs, could reasonably conclude that the Foot First entities were deeply interrelated. For example, Schmulbach received an election form for a profit sharing plan and trust under Foot First I, despite the fact that Schmulbach was considered to be an employee of Foot First III. (Pls.' Add'l Facts ¶ 52). Moreover, plaintiff Schmulbach's Daily Attendance Record for 1991 lists her "departments" as Schaumburg (Foot First I) and Aurora (Foot First III). (*Id.* ¶ 6). As to plaintiff Lynam, she states in her deposition testimony that she was told when she was hired that she would be working in both the Foot First I and III offices. (*Id.* ¶ 3). During her employment, Lynam worked at all the various Foot First office locations. (*Id.* ¶ 4). In addition, Lynam received a letter from Sklar in which he computed her raise based on her length of employment with both Foot First III and Foot First I. (*Id.* ¶ 61). In sum, the requisite degree of intermixture between the various Foot First entities is established by the record.

### 2. Common Management

■ The undisputed facts show that Sklar controlled and conducted the hiring for all of the Foot First entities (Pl's Add'l Facts ¶ 43), including the placement and content of advertisements for open positions. Sklar also controlled not only the periodic setting of the pricing schedules and computerized codes for various procedures for all the Foot First entities, but also the payroll process and billing operations for all of the Foot First entities. (Pls.' Add'l Facts ¶¶ 29–30).

All data entries from the Foot First offices were run centrally out of the Schaumburg office, including information regarding patient accounts, insurance billing and pay-

ments (*Id.* ¶ 32). Sklar handled all of the financial aspects relating to all of the offices. (*Id.* ¶ 55). He was considered to be the "boss." (Lantvit Dep. at 38).

### 3. Centralized Control

■ The third and perhaps most critical factor of the single employer doctrine is also met.[4] Most significantly, Sklar controlled and conducted the hiring of all of the Foot First entities. (Pls.' Add'l Facts ¶ 43). Moreover, as stated above, he controlled the payroll process and billing operations for all of the defendant entities. (*Id.* ¶ 31). All of the data entries regarding patient accounts, patient billing to insurance companies and payments to insurance companies were run centrally out of the Schaumburg office. (*Id.* ¶ 32).

Almost all of the administrative controls of the Foot First entities were centralized at the Schaumburg location. Indeed, all of the corporate defendants used the same letterhead which read "Foot First Podiatry Centers, P.C." and listed the Schaumburg address of Foot First I. (*Id.* ¶ 16). All the Foot First doctors picked up their respective office's paychecks from the Schaumburg office for dissemination to the employees. (Def.'s Answer to Pls.' Facts ¶ 12). Billing for the Foot First entities was issued from the Schaumburg office. (Pls.' Add'l Facts ¶ 13). Patients' balances and needs were tracked on a computer software program that could only be accessed in the central Schaumburg office. (*Id.* ¶ 36). All advertisements seeking employees for Foot First Podiatry Centers were placed out of the Schaumburg office at the direction of Sklar. While the corporate defendants point to the fact that each entity has a different tax identification number, (Corp.Defs.' Facts ¶ 12).

This fact carries little probative weight because the billing, based on the same tax numbers, was centralized in the Schaumburg office and coordinated by one individual. (Reid Dep. at 10, 15, 20, 48–51).

### 4. Common Ownership and Financial Control

■ Here, Sklar is not only the sole owner of Foot First I, III, IV, and V. (Pls.' Facts ¶ 26), he was the President and Secretary of all four corporate defendants during the relevant time period. (Defs.' Facts ¶ 7). He is the sole shareholder in all four entities. (Sklar Dep. at 14). While common ownership does not, in and of itself, tend to show common control of personnel decisions, *Rogers*, 7 F.3d 577, 583, here Sklar's ownership of the corporate defendants is but one of many examples in the record revealing a highly integrated base of operations.

Thus, under the above four-part analysis, the corporate defendants, namely Foot First I, III, IV, and V, constituted a single employer for purposes of Title VII. The entities were sufficiently interrelated, under common management and ownership with centralized control of labor relations to confer subject matter jurisdiction and thus defeat corporate defendants' Motion For Partial Summary Judgment As To Count I.[5] Any other holding would elevate form over substance for purposes of enforcing Title VII.

### *Count II—Assault and Battery*

■ The Court first will address the individual defendants' Motion For Partial Summary Judgment on the basis that this Court lacks supplemental jurisdiction over the state-law assault and battery claim. Defendants argue that the Title VII and the as-

---

**4.** *See, e.g., Rogers v. Sugar Tree Products, Inc.* 7 F.3d 577, 582 (7th Cir.1993) (holding that centralized control of labor is a "central concern") (citing *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir.1983)).

**5.** Corporate defendants also advance the argument that the Foot First entities, taken individually, do not constitute "employers" under Title VII because none employed 15 or more employees for the requisite amount of time under the statute. Because the corporate defendants do not dispute the fact that when considered in the aggregate, they meet the requisite number of

employees under Title VII, we need not address this issue. However, we note for the sake of completeness that a significant dispute exists as to the authenticity of certain employee records offered by the corporate defendants to show the number of employees employed by the various Foot First entities during the relevant time periods. Thus, the Court is unable to conclude whether any or all of the corporate defendants, viewed individually, employed the requisite number of employees to satisfy Title VII. (Corp. Defs.' Reply Mem. at 3).

sault and battery claims do not arise from a common nucleus of facts because Count II, requires the plaintiffs to establish a cause of action for assault and battery, is directed against the individual defendants whereas Count I is directed at the plaintiff's employer.

As long as a federal court has original jurisdiction of a claim, section 1367(a) dictates that the court

> shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). *See also Ammerman v. Sween,* 54 F.3d 423, 424 (7th Cir.1995) (citing *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)).

 Supplemental jurisdiction is not limited to restatements of the same basic ground for recovery. Indeed, the supplemental claims may be separate claims or they may be different counts or grounds or theories in support of what is essentially a single claim, as long as the claim revolves around a central fact pattern. *White v. County of Newberry,* 985 F.2d 168 (4th Cir. 1993).

 To exercise supplemental jurisdiction, there must be a common nucleus of operative fact that parties ordinarily would be expected to resolve in one judicial setting. *In re Emerald Acquisition Corp.,* 170 B.R. 632 (N.D.Ill.1994). The allegations under Counts I and II share the same relevant time period, arise from the same allegedly onerous work environment and involve the same defendants to the extent that the defendants in Count I are the corporate-form counterpart to the individual defendants in Count II.

Indeed, the Seventh Circuit has held that "[a] loose factual connection between the [state and federal] claims is generally sufficient" to confer supplemental jurisdiction over the state claim. *Ammerman v. Sween,* 54 F.3d 423, 424 (7th Cir.1995). In *Ammer-*

*man,* similar to the arguments presented here, the defendants asserted that the Title VII and assault and battery claims in that case did not arise from a common nucleus of facts because it was not necessary to establish that the assault occurred as plaintiff alleged to prove that the employer failed to take effective remedial action. The Seventh Circuit rejected defendant's arguments, holding that "without reference to the facts surrounding the assault, there could have been no sexual harassment claim against the employer." *Id.*

Accordingly, plaintiffs' factual allegations regarding incidents of physical assault and battery by the individual defendants are highly relevant to the determination of whether a hostile work environment existed. We hold, therefore, that the assault and battery claim is sufficiently connected to the Title VII claim against the corporate defendants to confer jurisdiction on the Court to hear the state claim. Moreover, while 28 U.S.C. § 1367(c) sets out reasons a district court may decline to exercise such jurisdiction over a claim, we find no such basis to exist here and choose to exercise supplemental jurisdiction over Count II.

 Having determined that the Court has jurisdiction to preside over Count II, the Court next turns its attention to the individual defendants' Motion to File its Amended Answer, in which individual defendants set forth the statute of limitations defense. Resolution of that motion encompasses resolution of individual defendants' Motion for Partial Summary Judgment As To Plaintiff Lynam's Assault And Battery Claim which individual defendants contend is time barred.[6] Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." FED.R.CIV.P. 15(a). While the Seventh Circuit has noted that "leave will generally be given," *Daugherity v. Traylor Bros., Inc.,* 970 F.2d 348, 351 (7th Cir.1992) (citing *Amendola v. Bayer,* 907 F.2d 760, 764 (7th Cir.1990)), the Seventh Circuit has cautioned that amendment under some circumstances is inappropriate:

---

**6.** There is no dispute as to the timeliness of plaintiff Schmulbach's assault and battery claim,

as her employment extended through May of 1993.

[L]eave to amend is 'inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.'

*Daugherity v. Traylor Bros., Inc.*, 970 F.2d at 351 (quoting *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir.1992)). The assessment whether such extenuating factors exist is within the discretion of the district court. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 801, 28 L.Ed.2d 77 (1971). So too, the court has discretion in balancing the interests of "fair, quick, and inexpensive determination of every action versus prejudice [from] a delayed motion [to amend the pleadings]." *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664 (7th Cir.1986) (discussing Rule 15(b)), *cert denied*, 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987).

In this case, the individual defendants filed their Answers to the Amended Complaint on July 12, 1995. Defendants' motion for leave to file an amended answer, setting forth the statute of limitations defense, was filed on December 15, 1995. After a careful evaluation of the record in this case, this Court is not persuaded by the plaintiffs' general claim of prejudice, which fails to point to any specific evidence of undue prejudice in this instance [7] or bad faith on the part of the individual defendants to support their contention.

Thus, pursuant to our discretionary powers under Fed.R.Civ.P. 15 and in the absence of a showing of prejudice, we will allow the individual defendants to amend their Answer to interpose their affirmative defense. We do not in any way intend for this ruling to encourage tardy submissions of affirmative defenses, as such delay is an unnecessary drain on the resources of both the plaintiffs and the Court.

Having granted the individual defendants' motion to amend their answer, we now address the individual defendants' motion for partial summary judgment as to Count II (assault and battery) with regard to the timeliness of plaintiff Lynam's complaint. Under Illinois law, an action for assault and battery is subject to a two-year statute of limitations. 735 ILCS 5/13–202 (1993). Plaintiff Lynam asserts that she was terminated on or about November 3, 1992 and further claims that the assault and battery occurred during her employment. Thus, individual defendants argue that even if the alleged acts were to have occurred on her last day of work, Lynam's claim, filed on November 14, 1994, is indisputably untimely.[8] As plaintiffs do not attempt to controvert the factual basis of this claim, we agree. Accordingly, the individual defendants' Motion for Partial Summary Judgment As To Plaintiff Lynam's Assault And Battery Claim (Count II) is granted.

## CONCLUSION

For the foregoing reasons, the corporate defendants' motion for partial summary judgment as to Count I is denied. Additionally, the individual defendants' motion for partial summary judgment as to Count II is granted. A Final Pretrial Order, together with any motions in limine, will be due on April 15, 1996. This case will be placed on this Court's May Trial Calendar. A status hearing will be held on March 26, 1995 at 9:00 a.m. for the explicit purpose of setting a firm trial date.

---

7. Of course, plaintiff Lynam suffers if she is foreclosed from pursuing her assault and battery action because the statute of limitations has run. However, that is not the type of prejudice that is considered by the court in making its determination in this matter.

8. While the Defendants' Memorandum in Law in Support of its Motion for Partial Summary Judgment mistakenly stated the year in which plaintiffs filed their lawsuit as 1992. Nevertheless, it is apparent from the court's records and the pleadings that the suit was filed on November 14, 1994.