Enrica CIANCI, Plaintiff–Appellant,

v.

PETTIBONE CORP., Beardsley Piper Division,[1] James Hall, and Morris Wells, Defendants–Appellees.

No. 97–2115.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1998.

Decided Aug. 19, 1998.

---

1. Although the appellees have not filed a motion indicating a change in name, appellees' counsel states in its amended certificate of interest that

Pettibone Corporation, Beardsley Piper Division is currently known as Beardsley & Piper, L.L.C.

William B. Thompson (argued), Wheaton, IL, for Plaintiff–Appellant.

Mark E. Shure, Kevin T. Keating (argued), Keating and Shure, Chicago, IL, for Defendants–Appellees.

Mark E. Shure, Keating and Shure, Chicago, IL, for Defendant–Appellee Beardsley Piper Division.

Before CUMMINGS, COFFEY, and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Enrica Cianci worked at the Beardsley Piper (Beardsley) Division of the Pettibone Corporation (Pettibone) for twenty-three years until the time of her termination. Cianci filed suit against Pettibone and two of its employees asserting that the defendants violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. (Count I), the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. (Count II), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5 (Count III). Both parties consented to allow a magistrate judge to exercise jurisdiction over the case for all proceedings regarding the defendants' motion for summary judgment. See 28 U.S.C. § 636(c); Fed.R.Civ.P. 73. The magistrate judge granted summary judgment in favor of the defendants on all three counts and Cianci appeals.

**2.** We will refer interchangeably to defendant Pettibone Corporation as "Pettibone" and "Beards-

## I. BACKGROUND

Pettibone's Beardsley Division manufactures automated foundry equipment.[2] Sometime in 1989 or 1990, Cianci started working as an executive secretary and assistant to Morris Wells, Beardsley's President. Beginning in early 1991, Cianci split her time evenly between her position with Wells and working as a sales order analyst in Beardsley's customer sales and service department. As a sales order analyst, Cianci reported directly to Tony Odarczenko, Product Manager, and indirectly to James Hall, Beardsley's Vice–President of Sales and Marketing. Cianci was assigned to work fulltime as a sales order analyst from February 1994 until her departure in April 1994. When Cianci asked Hall whether her transfer to the customer sales department on a full-time basis meant that she soon would be fired, Hall told Cianci, "You are too valuable to the company. I would never let you go."

According to Cianci, Wells stated on several occasions between 1991 and 1994 that she was "getting too old for the job." In addition, Cianci did not receive a bonus in June 1993 although she had received bonuses previously and Odarczenko, who had been at Beardsley for a shorter period of time, received a $2,000 bonus that year.

In February 1994, Cianci wrote to Odarczenko asking permission to take four weeks' vacation to visit her sick mother in Italy. In a memorandum dated February 14, 1994, Odarczenko denied Cianci's request, stating that the "requested absence for vacation in an increment of more than two weeks would have an adverse effect on [Beardsley's] ability to handle parts orders on a timely basis." Odarczenko concluded that she could not take the vacation "because of the excessive burden it would place on the department work load." Cianci testified that she explained her situation to Hall and Odarczenko in a subsequent meeting with them. She reminded Hall that she had taken four weeks off two to three times in the past with no objection from Beardsley. Hall refused to grant her request.

ley" throughout this opinion.

Cianci then submitted another memorandum on February 17, 1994, which was received by Odarczenko seeking permission to take two weeks and one day of "personal leave" in June 1994 in order to care for her mother who was experiencing "serious health problems." The memorandum also requested two weeks' vacation at the end of the personal leave for a total of four weeks and one day away from the office. Cianci also partially completed a form, which she states Hall gave her, entitled "Employer Response to Employee Request for Family or Medical Leave," which was dated February 17, 1994. The record is not clear on this point, but it appears that Hall called Cianci into his office and again denied her request, stating that he did not like the idea of her taking four weeks' leave. Pettibone asserts that Cianci's request under the FMLA was denied because she did not provide the medical certification required by Pettibone's leave-of-absence policy. Cianci concedes that she did not file such a certification because she was never asked to provide one.

On April 15, 1994, Odarczenko instructed Cianci and one of her coworkers to go to a conference room to meet with Hall. Odarczenko also attended the meeting along with Mary Mendez, a sales manager, and Bob Mitchell, the head of personnel. At the meeting, Hall showed Cianci and her coworker a piece of paper listing personal shipments each had made through Beardsley's DHL express courier service account. Hall told the two women to study the list and informed them that they were suspended for three days for having made personal shipments charged to the company without reimbursing the company. While Cianci was on suspension, she received a letter by courier from Hall stating that she was terminated effective April 20, 1994, because of her unauthorized use of courier services. Pettibone's written termination policy states that theft of company property constitutes grounds for immediate termination.

The listing shown to Cianci during the April 15 meeting indicates that Cianci made eighteen total shipments to a bank, two mort-gage companies, a credit card company, a check supply company, and her nephew. Cianci admits that she made these personal shipments and that she did not reimburse the company.[3] However, Cianci asserts that personal use of express courier services was a fringe benefit made available to many Beardsley employees. According to Cianci, Wells and Philip Westfall, Vice–President of Marketing and Sales for a division of Beardsley, used DHL for personal purposes without reimbursing the company. Further, Cianci testified at her deposition that at least four other employees used overnight courier services for personal reasons. In support of this position, Cianci submitted an affidavit from John Dreier, Credit Manager for Beardsley, stating that it was the practice of the company to permit the personal use of such services as DHL and UPS without requiring reimbursement. Dreier's affidavit also states that Wells "never paid" for his personal DHL shipments until two days after Cianci was fired when he reimbursed Beardsley for two personal shipments he made before Cianci's termination. His affidavit further states that two other employees, including one woman, also used such shipment services without reimbursing the company, refuting the employees' sworn statements that they had never used such services without reimbursing the company. In addition, Cianci asserts that she had permission from Mendez to send personal packages using the company account. According to Cianci, Mendez once asked her whether she had sent a personal DHL package, but Mendez never indicated that it was against company policy and did not ask Cianci to reimburse the company.

## II. DISTRICT COURT PROCEEDINGS

The magistrate judge granted Pettibone's motion for summary judgment on all three of Cianci's claims. With respect to Cianci's Title VII claim, the magistrate judge concluded that Dreier's affidavit that another woman who also had used express courier services for personal reasons and was not fired undermined Cianci's claim that she was terminated

---

**3.** Although Cianci did not sign her name to the shipping slips when making personal shipments, she did sign the shipping slip when she sent documents on behalf of Beardsley.

because she is female. The magistrate judge also rejected Cianci's claim of age discrimination, which was based on Wells's comments that Cianci was "getting too old for the job." In addition, the judge found that the evidence of age discrimination under the indirect method of proof was insufficient for a reasonable jury to find in Cianci's favor because she presented no evidence that younger employees were treated more favorably. Finally, the magistrate judge granted summary judgment on the FMLA claim, concluding that Cianci did not request leave "in order to care for" her mother, and thus was statutorily ineligible for FMLA leave.

## III. ANALYSIS

This court reviews a grant of summary judgment *de novo. Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir.1997). Viewing the evidence in a light most favorable to Cianci, this court will affirm the grant of summary judgment if the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

### A. Title VII

Cianci asserts that she was terminated because she is female. Title VII makes it unlawful for an employer "to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Cianci appears to proceed under the indirect method of proof in an attempt to raise an inference of discrimination. The indirect method first requires her to offer sufficient evidence to establish a prima facie case. *Pafford v. Herman*, 148 F.3d 658, 665–66 (7th Cir.1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Once Cianci establishes a prima facie case, there is a rebuttable presumption of discrimination and the employer must offer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the employer makes this showing, then the presumption is eliminated and the plaintiff must show that the employer's reason for the adverse employment ac-

tion is a pretext for discrimination. *See Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir.1995).

Neither the parties nor the magistrate judge ascertained whether Cianci has successfully demonstrated a prima facie case of gender discrimination. Generally, a plaintiff must establish her prima facie case before the court will proceed to an analysis of pretext. *See Coco v. Elmwood Care*, 128 F.3d 1177 (7th Cir.1997). However, because Cianci ultimately fails to raise a genuine issue of material fact that she was terminated because she is female, we will assume that the prima facie case has been satisfied. Thus, the burden shifts to Pettibone to set forth a legitimate, non-discriminatory reason for firing her. Pettibone asserts that Cianci was fired because she made eighteen personal shipments using Beardsley's DHL account without reimbursing the company. Because Pettibone has proffered a legitimate, non-discriminatory reason for Cianci's discharge, any presumption of discrimination falls away.

■ Cianci has the ultimate burden of persuasion. She must show that Pettibone's "proffered reason for the dismissal was false and only a pretext for discrimination, i.e., that [gender] more likely motivated the employer." *See Crim v. Board of Educ. of Cairo Sch. Dist.*, 147 F.3d 535, 540–41 (7th Cir.1998) (internal citations and quotation marks omitted). Cianci contends that the company discriminated against her by allowing other employees to use the company's courier services for personal use without reimbursing the company. In support, she points to Dreier's affidavit which states that it was company practice to permit personal use of company courier accounts and that, in fact, several of her coworkers used such services for personal reasons and did not reimburse the company.

Although Dreier's testimony is probative, it does not demonstrate that Pettibone lied about its reason for discharging Cianci. While the decision to terminate Cianci and not others may have been unfair, "Title VII does not prohibit unfairness or wrongheaded decisions in the workplace." *Johnson v. Hondo, Inc.*, 125 F.3d 408, 415 (7th Cir.1997). Cianci has not shown that the reason was

less than truthful, that is, that Pettibone did not honestly believe that it fired Cianci because of her personal use of DHL services. *See Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995). Cianci claims she was terminated because she is a woman, but her testimony and that of Dreier indicates that at least one other woman was included in the group of other employees who used DHL services and was not discharged.

▪ As for her evidence of gender discrimination, Cianci cites Beardsley's failure to give her a bonus in 1993 although she had received one in prior years and her supervisor, who was male, received $2,000 that year. But Cianci's failure to receive a bonus as compared to Odarczenko is easily attributed to the differences in their responsibilities and pay, and a reasonable jury could not conclude that it was based on her gender. Odarczenko's position of product manager entailed more responsibility and was more highly paid than Cianci's position as a sales order analyst.[4] While Cianci also points to her replacement by a male as evidence of gender discrimination, this is simply insufficient to demonstrate that Cianci's gender motivated the decision to terminate her. *See Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996) (per curiam) ("That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition.").

While Pettibone's decision to terminate her may not have been wise or correct or even fair, Cianci simply has not demonstrated that Pettibone fabricated its reason for terminating her. "This record does not contain the proper quantum or quality of evidentiary proof to support an ultimate finding of discrimination." *Bahl v. Royal Indem. Corp.*, 115 F.3d 1283, 1293 (7th Cir.1997). Thus, we conclude that the district court did not err in granting summary judgment to Pettibone on Cianci's gender discrimination claim.

## B. ADEA Claim

▪ Cianci also asserts that Pettibone discriminated against her because of her age.

Cianci was forty-seven years old when she was terminated by Pettibone and replaced by a forty-two year old male. Cianci claims that Wells's comments on approximately five occasions between 1991 and 1994 that she was "getting too old for the job" constitute direct evidence that she was terminated because of her age. Under the direct method of proof in employment discrimination cases, "the plaintiff may show (either through direct or circumstantial evidence) that the employer's decision to take the adverse job action was motivated by an impermissible purpose, such as her race or national origin [or age]." *Pafford*, 148 F.3d at 665–66. However, "before seemingly stray workplace remarks will qualify as direct evidence of discrimination, the plaintiff must show that the remarks were related to the employment decision in question." *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1403 (7th Cir.1996) (internal citation and quotation marks omitted).

Although Wells was Cianci's boss at the time he made the comments, Cianci had stopped working for Wells approximately two to three months before she was discharged. Indeed, it is feasible that Wells's comments were related to Cianci's former position as his executive secretary, leading to her transfer to customer service. *See Bahl*, 115 F.3d at 1293 ("[C]omments cannot defeat summary judgment in favor of an employer unless they are both proximate and related to the employment decision in question."). Cianci's complaint, however, does not allege that her transfer constituted an adverse employment action. We also note that Cianci has failed to offer any evidence demonstrating that Wells was involved in the decision to terminate her. Hall was Cianci's boss at the time she was fired and signed and sent her termination letter. *See Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 452 (7th Cir.1998) (statements must relate to decision-maker's motivation to terminate plaintiff due to his or her age); *see also Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir.1997) (no evidence that director who made offensive comments influenced general manager's decision to fire plaintiff). We con-

4. The record shows that the salary range for a Product Manager is $33,192 to $54,936, whereas the salary range for a Sales Order Analyst is $17,680 to $31,512.

clude that Wells's comments are not sufficiently related to the decision to discharge Cianci to create an inference of discrimination. *See Bahl*, 115 F.3d at 1293.

■ Cianci also proceeds under the *McDonnell Douglas* indirect method of proof. To establish a prima facie case of age discrimination under the ADEA, Cianci must show that (1) she was in the protected age group of 40 or older; (2) she was performing her job satisfactorily; (3) she was discharged; and (4) substantially younger employees were treated more favorably. *See Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 676 n. 1 (7th Cir.1997). With respect to the fourth prong, "an inference [of age discrimination] can not be drawn from the replacement of one worker with another worker insignificantly younger." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Rather, "a plaintiff must show that [s]he was replaced by someone 'substantially younger,' although not necessarily outside the protected class." *Richter v. Hook–SupeRx, Inc.*, 142 F.3d 1024, 1028 (7th Cir. 1998) (internal citation omitted).

■ Cianci relies heavily on the fact that she was replaced by a person five years younger than she was. We recently explained that "substantially younger" requires a ten-year difference in age between the plaintiff and her replacement and that an age disparity of less than ten years is presumptively insubstantial unless the plaintiff "directs the court to evidence that her employer considered her age to be significant." *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir.1997). It is clear then that the five-year difference in this case, in and of itself, fails to create an inference of age discrimination. Even considering Wells's alleged comments that Cianci was "getting too old for the job," Cianci has failed to establish the necessary connection between the comments and her termination. Because Cianci has failed to make out a prima facie case of age discrimination, we need proceed no further. *See Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1142 (7th Cir.1998). Accordingly, we conclude that the district court properly granted summary judgment in Pettibone's favor on the ADEA claim.

## C. FMLA Claim

■ Congress passed the Family and Medical Leave Act in 1993 "to help balance the burden of caretaking among family members and also to balance the demands of the workplace with the demands of the family." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1023 (7th Cir.1997). "Employers covered by FMLA are required to grant leave to eligible employees: ... (3) To care for the employee's spouse, son, daughter, or parent with a serious health condition." 29 C.F.R. § 825.112(3) (1993); *see also* 29 U.S.C. § 2612(a)(1). The FMLA applies to any man or woman who has worked at least 1250 hours a year at a firm employing 50 or more employees at least 20 weeks of the year. *See* 29 U.S.C. § 2611(2), (4). Neither party disputes that Pettibone qualifies as an employer under the FMLA and that Cianci is an eligible employee. However, Cianci contends that Pettibone improperly denied her FMLA-qualifying leave.

Before addressing any substantive issue, however, initially we must determine whether Cianci has a remedy under the FMLA. Pettibone, without citation to authority, asserts that Cianci does not because, although she made her request for leave in February 1994, she was fired in April 1994 before she was to take the requested leave in June 1994. Cianci responds that Pettibone violated the law when it denied the leave in February; thus, she asserts, whether she was an employee when she was to take the requested leave is irrelevant.

To the extent that Cianci is unable to demonstrate any prejudice under the FMLA, we believe it is probative whether she was employed at the time the leave was to take place. The FMLA provides for compensatory damages equal to the amount of wages, salary, employment benefits, or other compensation the employee was denied or lost. 29 U.S.C. § 2617(a)(1)(A)(i)(I). If the employee was not denied or did not suffer a loss of income, the employee may recover other actual monetary losses that directly resulted from the violation. 29 U.S.C. § 2617(a)(1)(A)(i)(II). Cianci did not suffer any diminution of income, and, on the record

before us, incurred no costs as a result of the alleged violation. Although Cianci's complaint seeks $300,000 in compensatory and punitive damages, the record contains no support for this request. Significantly, when asked at oral argument, Cianci's counsel was unable to tell us what relief the FMLA could provide to his client. While the FMLA also provides for equitable remedies, such as employment, reinstatement, and promotion, *see* 29 U.S.C. § 2617(a)(1)(B), Cianci's complaint makes no request for such relief.

We need not decide in this case whether an employee who is terminated before she takes the requested leave has a right to a remedy under the FMLA as a matter of law. On this record, Cianci has failed to come forth with any evidence that she has a remedy under the FMLA. In the absence of such support, summary judgment on behalf of the defendant was proper.

Before closing, we decline Cianci's invitation to reconsider our decisions holding that individual supervisors who are not otherwise employers cannot be sued under Title VII or the ADEA. *See Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 52 n. 2 (7th Cir.1995) (ADEA); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir.1995) (Title VII). Cianci asserts that this court should adopt the "better law" as stated in two district court cases. *See Curcio v. Chinn Enter., Inc.*, 887 F.Supp. 190 (N.D.Ill.1995); *Lynam v. Foot First Podiatry Centers*, 886 F.Supp. 1443 (N.D.Ill.1995). We note, however, that *Curcio* and *Lynam* were decided prior to our decisions in *Matthews* and *Williams* in which we addressed the issue raised by Cianci, and are inconsistent with our current caselaw. In addition, Cianci's argument is undeveloped and we see no reason to reverse our earlier decisions now.

## IV. CONCLUSION

We affirm the grant of summary judgment on the defendants' behalf with respect to Cianci's claims of gender and age discrimination, and her FMLA claim.

AFFIRMED.